UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD CARTER,

    *Plaintiff,*

    v.        Case No: 2:25-cv-1719

CITY OF NEW BERLIN, LISETTE CEBALLOS,
MELISSA ROMENESKO, & STACEY HOWARD

    *Defendants.*

## COMPLAINT

Plaintiff Richard Carter, by his attorneys, Strang Bradley, LLC, for his complaint against Defendants City of New Berlin, Lisette Ceballos, Melissa Romenesko, and Stacey Howard states:

### INTRODUCTION

1. This is a civil rights lawsuit brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Carter's constitutional right to be free from unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution.

2. On June 23, 2024, Carter was pulled over for an expired registration. New Berlin Officer Lisette Ceballos unreasonably prolonged that stop, and then she and Defendants Officer Melissa Romenesko and Sergeant Stacey Howard arrested Carter without probable cause because Carter declined to answer questions.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over federal claims under 28 U.S.C. § 1331 and the state law claims for indemnification under 28 U.S.C. § 1367.

4. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of New Berlin is a political subdivision of the State of Wisconsin located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

5. Richard Carter is an adult resident of Waukesha County, Wisconsin.

6. Defendant City of New Berlin is a political subdivision of the state of Wisconsin and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment.

7. Defendants Lisette Ceballos, Melissa Romenesko, and Stacey Howard were, at the time of this occurrence, employed with the New Berlin Police Department.

8. At all times that Defendants Lisette Ceballos, Melissa Romenesko, and Stacey Howard interacted with Plaintiff on June 23, 2024, they were on duty and acting under the color of state and local law.

9. At all times that Defendants Lisette Ceballos, Melissa Romenesko, and Stacey Howard interacted with Plaintiff on June 23, 2024, they were acting within the scope of their employment with the City of New Berlin.

## FACTS

10. On June 23, 2024, Defendants prolonged a traffic stop of and arrested Plaintiff Carter because he declined to answer questions.

11. In Wisconsin, it is not a crime to decline to answer questions.

12. Defendant Ceballos pulled Carter over for an expired registration.

13. Ceballos asked Carter about what he was doing and where he was going.

14. Carter calmly and politely answered Ceballos's questions.

15. Ceballos took Carter's identification back to her car and ran his information.

16. By this time, other officers, including Defendants Romenesko and Howard, arrived at the traffic stop. Another officer was training.

17. The Defendants decided they wanted to investigate Carter for operating while intoxicated.

18. Carter was not intoxicated and did not show signs of intoxication.

19. Ceballos decided to issue a "10-day citation" for the registration, meaning if Carter renewed his registration in 10 days, the citation would be dismissed.

20. Ceballos walked back to Carter's car and told Carter, "I just need to go over some paperwork with you real quick, so I'm just going to ask that you step out of your car, and I'll talk to you about the paperwork in the rear of your car, okay?"

21. Carter told Ceballos he wasn't in the mood to speak further, but she could just give him the ticket.

22. Ceballos told Carter that she was in the mood to talk and wanted to talk things over.

23. Ceballos asked Carter again to step out of his car, and he did. He told the officers that he would step out but he didn't want to talk.

24. At the back of Carter's car, officers ordered Carter to keep his hands out of his pockets.

25. Carter again told the officers he didn't want to talk.

26. Ceballos explained the 10-day citation to Carter.

27. Ceballos asked Carter if he had any questions, and Carter remained silent.

28. Romenesko asked Carter if he had any questions.

29. Carter gave a thumbs-up.

30. Carter asked the officers to let him know when they were done.

31. Ceballos said, "Okay, I'm done."

32. Ceballos again asked Carter if he had any questions, and Carter said he didn't.

33. Carter began to walk back to his driver's side door.

34. Ceballos told Carter to "hold on," and he stopped.

35. Ceballos then told Carter he seemed off, and it was the first time she had met him.

36. Ceballos asked Carter if he took any prescribed medication, and Carter remained silent.

37. Ceballos and Romenesko continued to talk to Carter, and he continued to remain silent.

38. Howard then told Carter his eyes seemed "a little bit squinty" and his movements seemed delayed.

39. Howard further explained that they were concerned Carter was unsafe to drive.

40. Carter remained silent.

41. Howard then threatened to arrest Carter if he didn't "go along with [their] wishes as far as an investigation is concerned."

42. Howard told Carter they were asking for his participation.

43. Howard asked Carter if he wanted to be arrested for obstruction.

44. Howard told Carter he has a "very clear criminal history."

45. Carter, however, has no criminal history.

46. Carter told the officers he wasn't in the mood to talk.

47. Ceballos asked Carter why he wasn't in the mood to talk.

48. Carter told the officers they had no probable cause to take him to jail and that he didn't have to speak to the officers.

49. Carter told the officers he would've spoken to them in his car, that he believed the officers asked him out of his car to create something that wasn't there, and that he wasn't in the mood to entertain them today.

50. Carter further explained that he doesn't drink or use drugs.

51. Carter told the officers if they arrest him, he would go get his blood tested to prove he wasn't intoxicated.

52. Carter told the officers that they pulled him out of the car for no reason.

53. Carter then explained his background in the community.

54. Carter told the officers that this is not what he felt like doing today.

55. Carter again told the officer they had no cause to arrest him.

56. Carter told the officers that he doesn't have a criminal record.

57. Howard interrupted Carter and told him that she wanted him to talk, but she wanted him to listen to her now.

58. Carter again said he wasn't in the mood to answer questions.

59. Ceballos told Carter that he has no criminal record.

60. Carter thanked her for clarifying.

61. Ceballos told Carter she was being transparent and had pulled him out of the car because many people drink and drive, even though Ceballos had originally told Carter she wanted to explain paperwork to him.

62. Ceballos accused Carter of playing the "silent game" while she was trying to do a "wellness check."

63. Ceballos accused Carter of not understanding the 10-day citation.

64. Carter explained that he has four cars and the only reason this car isn't registered is because Waukesha County requires an emission test, which he would take the next day.

65. Carter explained that he felt like pulling him out of his car was like a witch hunt.

66. Howard asked Carter if he would answer questions.

67. Carter said he wouldn't.

68. Ceballos, Romenesko, and Howard then arrested him for obstruction (or failed to intervene in the arrest).

69. Carter was booked into the jail and released.

70. Carter was not intoxicated.

71. Carter was never asked to undergo roadside testing.

72. Carter was never asked whether he had been drinking.

73. Carter was never offered a portable breathalyzer test.

74. Carter had no problem ambulating.

75. Carter did not have slurred or slowed speech.

76. Carter did not have red or glassy eyes.

77. Carter made no driving mistakes.

78. The officers smelled no alcohol or controlled substances.

79. After Carter left the jail, he paid for his own blood draw, which confirmed that he had no controlled substances or alcohol in his blood.

80. The City of New Berlin issued Carter a citation for obstruction.

81. Carter, representing himself pro se, moved to dismiss the citation at a bench trial.

82. The Municipal Court, by Judge Joseph Dorlack, granted Carter's motion and dismissed the citation.

83. As a direct and proximate result of the acts of Defendants, as detailed above, Plaintiff suffered, *inter alia,* pain and suffering, mental distress, humiliation, loss of liberty, loss of reputation, and has incurred expenses.

## COUNT 1:
## 42 U.S.C. § 1983 Claim for Prolonged Seizure

84. Plaintiff realleges the above paragraphs.

85. Defendants Ceballos, Romenesko, and Howard unreasonably prolonged the traffic stop of Carter without reasonable suspicion of criminal activity.

86. Defendants Ceballos, Romenesko, and Howard acted under color of state and local law.

87. Defendants Ceballos, Romenesko, and Howard thus violated Carter's Fourth Amendment rights.

88. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiff demands actual or compensatory damages against Defendants Ceballos, Romenesko, and Howard, and because they acted in reckless disregard for Plaintiff's rights, punitive damages, the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

### COUNT 2:
### 42 U.S.C. § 1983 Claim for False Arrest

89. Plaintiff realleges the above facts.

90. Defendants Ceballos, Romenesko, and Howard, while acting under color of law, arrested (or failed to intervene in the arrest of) Carter without probable cause, violating Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure, and are thus liable for damages under 42 U.S.C. § 1983.

91. The aforementioned actions of Defendants were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's injuries and damages set forth above.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiff demands actual or compensatory damages against Defendants Ceballos, Romenesko, and Howard, and because they acted in reckless disregard for Plaintiff's rights, punitive damages, the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 3:
### 42 U.S.C. § 1983 Claim for Retaliation

92. Plaintiff realleges the above facts.

93. Defendants Ceballos, Romenesko, and Howard, while acting under color of law, retaliated against (or failed to intervene in the retaliation of) Plaintiff Carter for his decision not to answer questions.

94. Defendants Ceballos, Romenesko, and Howard retaliated against Carter by arresting him (or failed to intervene in the arrest).

95. Carter's right to not answer questions is protected by the First, Fourth, and Fifth Amendments to the United States Constitution.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiff demands actual or compensatory damages against Defendants Ceballos, Romenesko, and Howard and because they acted in reckless disregard for Plaintiff's rights, punitive damages, the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 4:
## *Monell*[1] Claim Against City of New Berlin

96. Plaintiff realleges the above paragraphs.

97. Defendants Ceballos, Romenesko, and Howard violated Plaintiff Carter's Fourth Amendment rights by arresting him without probable cause. There was no probable cause because not answering questions is not obstruction in Wisconsin.

98. At the time, Defendant City of New Berlin had a policy of allowing its police officers, including Ceballos, Romenesko, and Howard, to arrest people for not answering questions.

99. Defendant City of New Berlin failed to adequately train, supervise, and discipline its officers regarding arrests of people for not answering questions.

100. Defendant City of New Berlin knew it was highly predictable that its police officers would arrest people for not answering questions.

101. Defendant City of New Berlin's policies, customs, and lack of training, supervision, and discipline caused Carter's constitutional injuries.

WHEREFORE, pursuant to 42 U.S.C. §§ 1983 & 1988, Plaintiff demands actual or compensatory damages against Defendant City of New Berlin because it acted in reckless disregard for Plaintiff's rights, punitive damages, the costs of this action, attorneys' fees, and such other relief that the Court deems just and equitable.

## COUNT 5:
## Indemnification Claim Against City of New Berlin

102. Plaintiff realleges the above paragraphs.

---

[1] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

103. Wisconsin law, WIS. STAT. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable, for acts within the scope of their employment.

104. At all times relevant to this action, the individual Defendants Ceballos, Romenesko, and Howard engaged in the conduct complained of while they were on duty and in the course and scope of their employment with the City of New Berlin.

WHEREFORE, Plaintiff asks this Court to find that New Berlin is liable to defend this action against Defendants Ceballos, Romenesko, and Howard and to satisfy any judgment entered against them, by virtue of WIS. STAT. § 895.46.

## JURY DEMAND

Plaintiff hereby demands a trial by jury, pursuant to FED. R. CIV. PRO. 38(b), on all issues so triable.

Dated: 4 November 2025,

Respectfully submitted,

STRANG BRADLEY, LLC
Attorneys for Plaintiff

/s/ R. Rick Resch
John H. Bradley
  Wisconsin Bar No. 1053124
R. Rick Resch
  Wisconsin Bar No. 1117722
Jacob Stroup
  Wisconsin Bar No. 1089159
STRANG BRADLEY, LLC
613 Williamson St., Suite 204
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com
Rick@StrangBradley.com
Jacob@StrangBradley.com